UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TAURICE LEONARD BROWN,

        Petitioner,

v.                                    Case No. 3:17-cv-416-J-34JBT

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.
_____

## ORDER

### I. Status

Petitioner Taurice Brown, an inmate of the Florida penal system, initiated this action on April 4, 2017,[1] by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Brown challenges a 2012 state court (Duval County, Florida) judgment of conviction for first degree murder and attempted first degree murder. Brown raises eight grounds for relief. See Petition at 5-20.[2] Respondents have submitted an answer in opposition to the Petition. See Response to Petition for Writ of Habeas Corpus (Response; Doc. 16) with exhibits (Resp. Ex.). Brown filed a brief in reply. See Petitioner's Reply to the State's Response to Petition for Writ of Habeas Corpus (Reply; Doc. 21). This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned by the Court's electronic docketing system.

## II. Relevant Procedural History

On December 16, 2010, a grand jury indicted Brown on charges of first-degree murder (count one) and attempted first-degree murder (count two). Resp. Ex. B1 at 33-34. Brown proceeded to a jury trial, at the conclusion of which the jury found him guilty as charged as to each count. Resp. Ex. B4 at 594-98. As to count one, the jury made specific findings that the killing was premediated; Brown carried, displayed, used, threatened to use, or attempted to use a firearm during commission of the offense; and Brown actually possessed and discharged a firearm during the commission of the offense causing death. Id. at 594. As to count two, the jury made specific findings that Brown carried, displayed, used, threatened to use, or attempted to use a firearm, and that Brown actually possessed and discharged a firearm. Id. at 597. On December 14, 2012, the circuit court sentenced Brown to a term of incarceration of life in prison without the possibility of parole, with a mandatory minimum sentence of life in prison, as to count one, and sixty-five years in prison, with a twenty-year minimum mandatory, as to count two. Resp. Ex. B7 at 1039-47. The circuit court ordered the sentence imposed for count two to run consecutively to the sentence imposed for count one. Id. at 1046.

Brown appealed his convictions and sentences to Florida's First District Court of Appeal (First DCA). Id. at 1077. In his initial brief, Brown, through counsel, asserted that the circuit court fundamentally erred when it instructed the jury on the law of principals. Resp. Ex. B15. The State filed an answer brief. Resp. Ex. B16. On February 5, 2014, the First DCA per curiam affirmed Brown's conviction and sentences. Resp. Ex. B17. Brown filed a motion for rehearing, which the First DCA denied on April 8, 2014. Resp. Ex. B18. The First DCA issued the Mandate on April 24, 2014. Resp. Ex. B19.

On July 30, 2014, Brown filed a pro se petition for writ of habeas corpus with the First DCA, in which he alleged that his appellate counsel was ineffective for failing to raise the following issues on direct appeal: (1) the prosecutor led a witness; (2) the circuit court erred in not allowing two witnesses to testify; (3) his trial counsel was sleeping at the end of his trial; and (4) the circuit court erred in denying his motion for judgment of acquittal. Resp. Ex. C1. On August 19, 2014, the First DCA per curiam denied the petition on the merits. Resp. Ex. C2.

On February 5, 2015, Brown filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850 Motion). Resp. Ex. D1 at 1-51. In the Rule 3.850 Motion, Brown alleged that his trial counsel was ineffective for failing to: (1) object to the State's principal theory, move to dismiss, formulate a defense to the principal theory, and object to the principal instruction; (2) file a motion to dismiss counts one and two and adequately argue a motion for judgment of acquittal; (3) file a motion to dismiss count two; (4) consult and discuss with Brown the case and defense strategies; (5) impeach a state witness; (6) request standard jury instructions for self-defense; (7) object to improper prosecutorial remarks; and (8) file a sufficient motion for new trial. Id. On November 23, 2015, the circuit court denied the Rule 3.850 Motion. Id. at 52-71. On February 15, 2017, the First DCA per curiam affirmed the denial of the motion without a written opinion, Resp. Ex. D2, and issued the Mandate on March 14, 2017. Resp. Ex. D3.

### III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Brown's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court

decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298

(2017). Also, deferential review under § 2254(d) generally is limited to the record that was

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the

'counsel' guaranteed the defendant by the Sixth Amendment."
Id., at 687, 104 S. Ct. 2052.

> With respect to prejudice, a challenger must demonstrate "a
> reasonable probability that, but for counsel's unprofessional
> errors, the result of the proceeding would have been different.
> A reasonable probability is a probability sufficient to
> undermine confidence in the outcome." Id., at 694, 104 S. Ct.
> 2052. It is not enough "to show that the errors had some
> conceivable effect on the outcome of the proceeding." Id., at
> 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as
> to deprive the defendant of a fair trial, a trial whose result is
> reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-

clad rule requiring a court to tackle one prong of the Strickland test before the other."

Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be

satisfied to show a Sixth Amendment violation, "a court need not address the performance

prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing

Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is

easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,

which we expect will often be so, that course should be followed." Strickland, 466 U.S. at

697.

A state court's adjudication of an ineffectiveness claim is accorded great

deference.

> "[T]he standard for judging counsel's representation is a most
> deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But
> "[e]stablishing that a state court's application of Strickland was
> unreasonable under § 2254(d) is all the more difficult. The
> standards created by Strickland and § 2254(d) are both highly
> deferential, and when the two apply in tandem, review is
> doubly so." Id. (citations and quotation marks omitted). "The
> question is not whether a federal court believes the state
> court's determination under the Strickland standard was
> incorrect but whether that determination was unreasonable -

a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As his first claim for relief, Brown alleges that his trial counsel was ineffective for failing to object to the State's use of the principal theory where the State failed to allege such in the Indictment. Petition at 5-6. Brown maintains that the State first notified the defense that it would be relying on the principal theory during its opening argument, which "ambushed" his defense. Id. at 5. According to Brown, his attorney should have moved to dismiss the Indictment based on the State's failure "to identify Brown as a principal." Id. Moreover, Brown contends that his counsel failed to properly prepare an independent acts defense to the principal theory and request a jury instruction regarding independent acts, which counsel should have done after conceding at trial that Brown was present at the scene but a passenger in Brown's car actually fired the shots. Id. at 6. Brown alleges

that counsel's errors in this regard ultimately confused the jury and resulted in his conviction. Id.

Brown raised a similar claim in his Rule 3.850 Motion. Resp. Ex. D1 at 18-26. In denying relief on this claim, the circuit court reasoned:

> The state need not charge the defendant as a principal as long as there is proof that individual aided or abetted in the commission of such crime. State v. Roby, 246 So. 2d 566, 570 (Fla. 1971); see Fogle v. Secretary of Dept. of Corrections, 2014 WL 806375 *7 (M.D. Fla. Feb. 27, 2014) (finding Roby to be "controlling Supreme Court precedent").
>
> Vincent Mariano testified Defendant was arguing with Anthony Wiggins in Mariano's driveway when Defendant "reaches in his driver's seat and pulls out a gun and starts shooting at [Wiggins]." According to Mariano, Defendant kept firing at the back end of Wiggins's car as it traveled toward Blanding Boulevard. Mariano reported also that the passenger in Defendant's car jumped out of Defendant's car and fired a gun at Wiggins's car.
>
> Wiggins testified he and Defendant argued after Defendant learned Mariano purchased drugs from Wiggins rather than from Defendant. Wiggins stated he drove away toward Blanding Boulevard, Defendant started shooting at Wiggins's car.
>
> James Evans testified that as he was driving on Blanding Boulevard on the morning of the murder, he heard what "sounded like a giant pack of firecrackers going off." The noise, which he later learned were gunshots, came from the direction of Transylvania Avenue where Mariano's house is located. As he heard the gunshots, Evans saw "an SUV strike a car in front of them and then the truck in front of them." Analiza Gobaton was the driver of the SUV.
>
> Officer Clayton Plank was the first officer from the Jacksonville Sheriff's Office to arrive at the scene of the car accident. When he arrived, fire and rescue personnel were already there tending to Ms. Gobaton. Fire and rescue personnel notified Plank that the driver had a gunshot wound on the left side of her head. Dr. Valerie Rao performed the

autopsy on Ms. Gobaton and determined Ms. Gobaton died from a "[p]enetrating gunshot wound to the head."

The State did not have to charge Defendant as a principal-the evidence is overwhelming that Defendant, who initiated the shooting, at the very least, aided or abetted in the murder of Ms. Gobaton and the attempted murder of Wiggins. Counsel's actions were not deficient because any objection would be meritless. Peterson v. State, 154 So. 3d 275, 281 (Fla. 2014) (citing Schoenwetter v. State, 46 So. 3d 535, 546 (Fla. 2010) (concluding counsel not ineffective for failing to make meritless argument). Therefore, Defendant is unable to satisfy the requirements of Strickland.

. . . .

As the record demonstrates *supra*, there was overwhelming evidence Defendant intended to shoot Mr. Wiggins, Defendant participated in the shooting, and Ms. Gobaton's death was a reasonably foreseeable consequence of Defendant's and his passenger's concerted actions. Counsel's performance was not deficient for failing to pursue a meritless defense. See Lugo v. State, 2 So. 3d 1, 21 (Fla. 2008) (concluding trial counsel not ineffective for failing to raise non-meritorious issue). Moreover, even if counsel pursued this theory, there is no reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 694. Consequently, counsel was not ineffective for failing to pursue an independent acts defense.

. . . .

Finally, Defendant claims counsel should have objected to the principal theory jury instruction because the jury was confused or misled by the instruction. Defendant bases his claim on questions the jury had during deliberations. The Court, however, explained:

> It is a question that deals with how they're to apply the law, and normally, in general the Court should rule that no further instruction will be given. It may be error for the Court to start answering questions like that, so I'm very reluctant to do that. . . . and this is, I believe, encouraged by our appellate court . . . for the

> Court to say, I've given you all the instructions
> you're going to get. I've already given them.
>
> Counsel is not ineffective for failing to make a futile objection.
> See Lugo, 2 So. 3d at 21.

Id. at 52-71 (record citations omitted). The First DCA per curiam affirmed the denial of this claim without issuing a written opinion. Resp. Exs. D2; D3.

To the extent that the First DCA decided the claim on the merits,[4] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim here is without merit. In Florida,

> [u]nder the principal theory, one who helps another commit or attempt to commit a crime is responsible for all of the acts of her fellow codefendant if she had a conscious intent the criminal act be done and performed some act, by word or deed, that was intended to aid in inciting, causing, encouraging, assisting, or advising the other person to either commit or attempt to commit the crime.

Roberts v. State, 4 So. 3d 1261, 1265 (Fla. 5th DCA 2009). Notably, "[t]here is no requirement, however, that the charging document specifically allege that the defendant

---

[4] Throughout this order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

acted as a principal in order for the State to pursue and the jury to be instructed on principals." Byrd v. State, 216 So. 3d 39, 43 (Fla. 3d DCA 2017) (citing State v. Larzelere, 979 So. 2d 195, 215 (Fla. 2008)). Regarding the independent act defense to the principal theory Florida's Fifth District Court of Appeal has explained,

> The "independent act" doctrine applies "when one cofelon, who previously participated in a common plan, does not participate in acts committed by his cofelon, 'which fall outside of, and are foreign to, the common design of the original collaboration.'" Ray v. State, 755 So. 2d 604, 609 (Fla. 2000) (quoting Dell v. State, 661 So. 2d 1305, 1306 (Fla. 3d DCA 1995)). Under this limited exception, a codefendant is not punished for the independent act of a cofelon who exceeds the scope of the original criminal plan. Id. However, when the codefendant was a willing participant in the underlying felony and the murder was committed to further the original criminal plan, the codefendant is not entitled to an independent act instruction. See id.; Lovette v. State, 636 So. 2d 1304, 1306 (Fla. 1994).

Roberts, 4 So. 3d at 1263. However, the "independent act instruction is inappropriate when the unrebutted evidence shows the defendant knowingly participated in the underlying criminal enterprise when the murder occurred or knew that firearms or deadly weapons would be used." Id. at 1264.

Concerning counsel's alleged failure to move to dismiss the Indictment, any objection to the Indictment on the ground it did not identify Brown as a principal would have been meritless. See Byrd, 216 So. 3d at 43. Counsel cannot be ineffective for failing to raise an argument that would not have succeeded. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1142 (11th Cir. 2005) (holding counsel cannot be ineffective for failing to raise a meritless argument); Bolender v. Singletary, 16 F.3d 1547, 1573 (11th Cir. 1994) (noting that "it is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Turning to Brown's contention that counsel should have prepared a defense using the independent acts doctrine and sought a jury instruction on the same, the record reflects that this doctrine would have been inapplicable given the facts of this case and, as such, Brown was not entitled to the instruction. At Brown's trial, Vincent Mariano testified that he had called Brown early in the morning of October 22, 2010, to purchase crack cocaine from Brown. Resp. Ex. B10 at 318-19. Brown, however, was taking a long time to come to Mariano's house, so Mariano called another dealer, Anthony Wiggins. Id. at 320-21. Wiggins ultimately arrived first to Mariano's house and they consummated a drug deal. Id. at 324-27. As Wiggins was backing his car out of Mariano's driveway, Brown drove up to the house. Id. at 327-28. Wiggins and Brown began to have a verbal confrontation while they were both in their respective cars. Id. Mariano then observed Brown reach into his driver's seat, pull out a handgun, and start shooting at Wiggins while he was still in the car. Id. at 329-30. Wiggins began to pull out of Mariano's driveway in order to avoid the gunfire, when both Brown and a passenger exited Brown's vehicle and continued shooting in Wiggins' direction. Id. at 330-33. Wiggins was not hurt, but one of the stray bullets struck a female motorist, eventually killing her. Resp. Exs. B10 at 307; B12 at 782-86.

Wiggins also testified at trial, acknowledging he went to Mariano's house to sell him crack cocaine. Resp. Ex. B11 at 416-17. Similar to Mariano's testimony, Wiggins stated that after he had sold the drugs to Mariano, a car pulled up and Brown exited from the driver's seat and appeared angry. Id. at 418-20. Wiggins was in the process of driving away when the man began shooting at him, at which point Wiggins grabbed his own gun and returned fire. Id. at 421-22. Wiggins was only able to fire off one round before his gun

jammed. Id. at 423-24. With his gun jammed, Wiggins sped down the street to avoid being shot, at the same time he observed Brown in the middle of the street continuing to shoot at him, with several rounds hitting his vehicle. Id. at 423-28. Wiggins stated that he saw a passenger exit Brown's car as well, but barely saw him and did not observe him shooting. Id. at 461-63. Law enforcement officers later confiscated Wiggins' gun. Id. at 466-67. Although Wiggins did not personally know Brown, he made a positive in-court identification of Brown as the shooter. Id. at 426-27.

Multiple residents who lived on the street where the shooting occurred, testified consistently with Mariano and Wiggins, stating that they saw a man in the street shooting at a car as it drove away, although some of the witnesses testified they only saw one shooter in the street. Id. at 470-83, 491-534, 545-65. The State also presented the testimony of Jason Garaway, who met up with Brown later that day after the incident. Resp. Ex. B12 at 707-08. Garaway testified he was to meet with Brown earlier that day, but Brown never showed up. Id. Later that day, however, Brown called him and told him he changed his phone number. Id. at 708. When they finally met up, Brown apologized for the delay and told him "he got caught up in something." Id. at 709.

Brown's brother, Maurice Henderson, testified that he owned a 9mm GLOCK handgun that he had kept in Brown's bedroom closet in their father's home. Id. at 720-21. After the shooting, he realized his gun was missing and had no idea what happened to it. Id. at 722-23. Notably, Brown made a jail call in which he told a woman on the phone how he left the scene of the shooting. Id. at 793-97. Law enforcement ultimately obtained Wiggins, Brown, and Mariano's cellphone records and location data. Resp. Exs. B12 at 798-99; B13 at 806-23. The cellphone records corroborated Mariano and Wiggins'

testimony, with calls and texts from the time immediately leading up to the shooting. Resp. Ex. B13 at 811-17. The cellphone tower data confirmed that Brown, Wiggins, and Mariano were at or around the same geographical location at the time of the incident. Id. at 822-23.

A firearm expert, Thomas Pulley, testified at the trial as well. Id. at 845-79. He examined seventeen casings, bullet fragments, and four firearms, including Wiggins' gun. Id. at 853-54. In total, Pulley concluded three guns, all using 9mm caliber ammunition, were involved in the shooting, with only one casing linked to Wiggins' firearm. Id. at 854-55. Notably, the bullet fragments recovered from the victim's head was not shot from Wiggins' gun. Id. at 864. Pulley also testified that fourteen of the casings were consistent with being shot from a 9mm GLOCK pistol, which was the same type of gun that Brown's brother kept in Brown's room and which went missing. Id. at 864-65. The other gun involved fired only two shots, but Pulley could not determine if it was one person using two guns or two people using two guns. Id. at 855, 875.

Although Brown presented witnesses and evidence in his defense, none of his witnesses presented testimony to suggest Brown did not play a role in the shooting or that the passenger acted independently. Accordingly, no evidence would have supported Brown's contention that he did not shoot at the victims and that the passenger in his car acted independently in shooting at the victims. Indeed, the record reflects quite the opposite, with two eyewitnesses confirmed Brown was the shooter, and forensic evidence indicated that fourteen of the shots came from a gun similar to the one Brown's brother kept in Brown's room that subsequently went missing. On this record, the independent act instruction would have been inappropriate in light of the unrebutted evidence showing

Brown knowingly participated in the shooting. See Roberts, 4 So. 3d at 1264. As such, counsel could not have been deficient for failing to argue this point as a defense or seek an independent act instruction. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Moreover, this evidence further demonstrates that even if this instruction was given, there is no reasonable probability the outcome of the trial would have been different because the State presented extensive evidence showing Brown's active participation in the shooting. Based on the foregoing, the relief Brown seeks in Ground One is due to be denied.

## B. Ground Two

In Ground Two, Brown avers that his trial counsel was ineffective because he failed to move to dismiss the Indictment and properly argue a motion for judgment of acquittal. Petition at 8-9. According to Brown, the State failed to allege felony murder in the Indictment and did not allege what felony formed the basis for the felony murder theory. Id. at 8. Brown contends that his counsel should have argued that the State could not establish premeditation because a stray bullet hit the deceased victim who was an innocent bystander. Id. at 9.

In his Rule 3.850 Motion, Brown raised a similar claim. Resp. Ex. D1 at 26-30. In denying relief on this claim, the circuit court explained:

> Defendant is correct in that the State did not charge Defendant with felony murder in Count One. Instead, the State charged Defendant with and the jury found premeditated murder in Count One. Likewise, the State did not charge Defendant with felony murder in Count Two. The State had no reason to charge Defendant with felony murder in either count.
>
> Defendant further claims there was insufficient evidence to sustain a finding of premeditation in either Count

One or Count Two. "Premeditation exists when there is a fully formed conscious purpose to kill." Boyd v. State, 910 So. 2d 167, 181 (Fla. 2005). "Premeditation may be formed in a moment and need only exist for such time as will allow the accused to be conscious of the nature of the act he is about to commit and the probable result of that act." Williams v. State, 967 So. 2d 735, 757 (Fla. 2007) (citing Boyd v. State, 910 So. 2d 167, 181 (Fla. 2005)).

As recounted *supra*, Defendant fired multiple shots at Wiggins's car as it drove down Transylvania Avenue toward Blanding Boulevard. Consequently, there was sufficient evidence that Defendant had a fully formed conscious purpose to kill Wiggins and had more than enough time to be conscious that shooting at Mr. Wiggins would cause harm. Consequently, there was sufficient evidence of premeditation and any objection by counsel would have been meritless. See Lugo, 2 So. 3d at 21. Defendant is not entitled to relief on Ground Two.

Id. at 58-59 (record citations and footnote omitted). The First DCA per curiam affirmed the denial of relief, without a written opinion. Resp. Exs. D2; D3.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Nevertheless, even if the state court's adjudication of this claim is not entitled to deference, this claim in Ground Two is without merit. In Florida,

"It is well established that an indictment which charges premeditated murder permits the State to prosecute under

> both the premeditated and felony murder theories." <u>Parker v. State</u>, 904 So. 2d 370, 382-83 (Fla. 2005). We have further held that "[t]he State need not charge felony murder in an indictment in order to prosecute a defendant under alternative theories of premeditated and felony murder when the indictment charges premeditated murder." <u>Kearse v. State</u>, 662 So. 2d 677, 682 (Fla. 1995). Similarly, this Court has "repeatedly rejected claims that it is error for a trial court to allow the State to pursue a felony murder theory when the indictment gave no notice of the theory." <u>Gudinas</u>, 693 So. 2d at 964.[5]

<u>Williams v. State</u>, 967 So. 2d 735, 758-59 (Fla. 2007). Moreover, "[b]ecause the State has no obligation to charge felony murder in the indictment, it similarly has no obligation to give notice of the underlying felonies that it will rely upon to prove felony murder." <u>Kearse v. State</u>, 662 So. 2d 677, 682 (Fla. 1995). Based on this precedent, Brown's arguments supporting his theory that counsel should have filed a motion to dismiss and argue a motion for judgment of acquittal fail as a matter of law. Any attempt by Brown's counsel to move to dismiss the indictment or argue for a judgment of acquittal based on the State's failure to allege felony murder in the Indictment would not have been successful. <u>See</u> <u>Williams</u>, 967 So. 2d at 758-59; <u>Kearse</u>, 662 So. 2d at 682. Therefore, counsel was not deficient in failing to make these arguments. <u>See</u> <u>Diaz</u>, 402 F.3d at 1142; <u>Bolender</u>, 16 F.3d at 1573. As such, relief on the claim in Ground Two is due to be denied.

### C. Ground Three

As Ground Three, Brown asserts that his counsel was ineffective because he did not object to jury instructions regarding felony murder and premeditation. Petition at 10-11. The basis for the objection is the same as that given by Brown in support of the claim that counsel should have moved to dismiss the Indictment. <u>Id.</u> Additionally, he contends

---

[5] <u>Gudinas v. State</u>, 693 So. 2d 953 (Fla. 1997).

that these instructions afforded the State the opportunity to present facts not in evidence, specifically that Brown went to Mariano's house to stop Wiggins from selling drugs in his territory. Id. According to Brown, this argument "conflicted with count two's supposed underlying felony of 'in the commission of an attempt to commit first-degree murder,'" which then "allowed the State to transfer intent from count two to count one." Id. at 11.

Brown raised a similar claim with the state postconviction court. Resp. Ex. D1 at 30-32. The circuit court denied relief on this claim, stating in part:

> According to Defendant in his next subclaim, transferring Defendant's intent to shoot Wiggins to an intent to shoot Ms. Gobaton was improper. "The doctrine of transferred intent, by definition, operates to transfer the defendant's *intent as to the intended victim* to the unintended victim, and nothing more." Mordica v. State, 618 So. 2d 301, 304 (Fla. 1st DCA 1993). The facts as discussed *supra*, clearly demonstrate Defendant's intent to shoot Mr. Wiggins, which means that intent transfers to an intent to kill Ms. Gobaton as well.

Id. at 60-61 (emphasis in original and record citations omitted). The First DCA per curiam affirmed the denial of this claim. Resp. Exs. D2; D3.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, the claim in Ground Three is without merit. As explained above in the Court's analysis of Ground Two, the State properly presented and argued a felony murder theory as to premeditation. See Williams, 967 So. 2d at 758-59; Kearse, 662 So. 2d at 682. Therefore, the State was entitled to jury instructions on felony murder and premeditation. Accordingly, counsel cannot be deemed deficient for failing to raise a meritless objection. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573.

Regarding Brown's contention that the State discussed facts not in evidence, the Court disagrees. During closing arguments "a prosecutor may 'assist the jury in analyzing, evaluating, and applying the evidence' and, therefore, may 'urge[ ] the jury to draw inferences and conclusions from the evidence produced at trial." United States v. Adams, 339 F. App'x 883, 886 (11th Cir. 2008) (quoting United States v. Johns, 734 F.2d 657, 663 (11th Cir.1984)). Here, the record reflects that both Brown and Wiggins sold drugs. Resp. Ex. B10 at 315-17. Mariano specifically testified that he was concerned that Brown and Wiggins would meet at his house at the same time because he did not want a confrontation between the two dealers. Id. at 322-23. Therefore, a logical inference to draw from this testimony was that Brown had a territorial issue with Wiggins. See Adams, 339 F. App'x at 886.

As to Brown's claim that the instructions led to the improper transfer of intent from count two to count one, this claim fails as a matter of law. As the circuit court noted, "[t]he doctrine of transferred intent, by definition, operates to transfer the defendant's *intent as to the intended victim* to the unintended victim, and nothing more." Mordica, 618 So. 2d at 304 (emphasis in original). "Accordingly, the doctrine of transferred intent . . . is

governed and limited by the intent operative as to the intended victim, not the unintended victim, and the severity of the offense predicated on the doctrine of transferred intent is that applicable had the intended victim been the one injured." Id. Based on this doctrine, the State in the case at bar needed to prove that Brown had a premeditated design to kill Wiggins in order for Brown to be found guilty of first-degree premeditated murder of Gobaton. The State charged Brown with the attempted first-degree murder of Wiggins; therefore, that charge included the same intent and premeditation needed to establish the same element as to first-degree murder charge. As noted above, the record contains ample evidence that Brown had "a full-formed conscious purpose to kill" Wiggins. Twilegar v. State, 42 So. 3d 177, 190 (Fla. 2010). Evidence suggests Brown did not like the fact Wiggins was selling drugs to Mariano and that he used a firearm to fire multiple shots at Wiggins at Mariano's house and while Wiggins fled the scene. Therefore, the jury could properly conclude that Brown had the requisite premeditation necessary to support a conviction as to the first-degree murder of Gobaton. See id. (noting that evidence of premeditation may be inferred from such facts as the type of weapon used, the presence or absence of provocation, previous difficulties between the parties, the manner in which the homicide occurred, and the nature of the wounds inflicted); Mordica, 618 So. 2d at 304. In light of the evidence presented as discussed above, any objection to the challenged jury instructions would have been meritless and, therefore, counsel was not deficient for failing to raise these objections. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. For the above stated reasons, Brown is not entitled to relief on his claim in Ground Three.

## D. Ground Four

Brown argues that his counsel gave ineffective assistance by conceding certain evidentiary points at trial without Brown's permission. Petition at 13-15. Specifically, he contends that counsel, without his permission, admitted that Brown went by the alias "Josh," Brown was a drug dealer, Brown was present at the scene of the shooting, the shooter was the passenger in Brown's vehicle, and Brown fled the scene with the passenger. Id. at 13-14. Brown maintains that his counsel never discussed the concession of these facts with him, and he did not authorize his counsel to concede these points. Id. at 14. Had counsel discussed these matters with him, Brown asserts that he would have testified in support of an independent act defense. Id. According to Brown, he would have testified that Mariano called him and asked him to bring drugs to Mariano's house, that Wiggins was the aggressor and fired first, that Brown's passenger fired all the shots, and that he had no idea his passenger would shoot at Wiggins. Id. Based on counsel's concessions, Brown now argues that counsel's advise not to testify was unreasonable. Id. Additionally, he avers that counsel failed to introduce sufficient evidence to support the independent act theory and request a jury instruction on the same. Id. at 15.

In his Rule 3.850 Motion, Brown raised a similar claim. Resp. Ex. D1 at 33-37. The circuit court denied relief on this claim, writing:

> To start, these facts were brought out by the prosecutor in his opening statement to the jury. Considering defense counsel's opening statement in its entirety, it is reasonable for counsel to concede the facts specified above. The thrust of the opening statement was the passenger, not Defendant, fired at Wiggins. "But Taurice Brown was there to sell drugs but he didn't-he didn't fire this weapon . . . ." According to counsel, Defendant dropped to the ground seeking cover

when the shots started. Counsel went on to explain that "there's somebody else with Mr. Brown in the car, the passenger. What does the passenger do? The passenger gets out of the car and starts firing in the direction of Anthony Wiggins."

Counsel was not ineffective for conceding the facts Defendant identifies in this claim. These facts were substantiated by competent evidence and did not interfere with counsel's reasonable defense. Defendant is not entitled to relief on Ground Four.

Id. at 61-62 (record citations and footnote omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Resp. Exs. D2; D3.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim is meritless because Brown cannot demonstrate prejudice. Each of the factual points Browns contends counsel conceded without his permission was unrebutted at trial. At trial, Mariano testified that at the time of the incident he knew Brown only by the name "Josh;" however, Mariano made an in-court identification of Brown as the man he knew as Josh and he also picked out Brown's photograph in a photospread law enforcement showed to him. Resp. Ex. B10 at 315-16,

351-54. Concerning the concession that Brown was a drug dealer, Mariano testified Brown sold drugs, id. at 315-16, and, most notably, in this claim itself, Brown specifically states that had he been able to testify he would have stated that he went to Mariano's house to sell drugs. Petition at 14. Likewise, Brown asserts that he also would have testified that he went to Mariano's house and that the passenger was the shooter, facts which Brown claims his counsel should not have conceded. Id. Thus, he would have testified to the same facts his counsel conceded. Moreover, as noted above, the State presented substantial evidence of Brown's guilt, including cellphone data placing Brown at the scene, several eyewitnesses who positively identified Brown as the shooter or saw his car, forensic evidence demonstrating that only one of the seventeen casings found at the scene could be attributed to Wiggins, and that fourteen of the seventeen casings were most likely fired from a 9mm GLOCK, the same type of gun that Brown's brother stored in Brown's closet and that went missing at the time of the incident. Based on this evidence, the Court finds there is no reasonable probability the outcome of the trial would have been different had counsel not conceded these points during opening statements. Accordingly, relief on the claim in Ground Four is due to be denied.

### E. Ground Five

Brown maintains that his counsel was ineffective for failing to impeach Wiggins and Mariano. Petition at 15-16. Concerning Wiggins, Brown asserts his counsel should have impeached Wiggins' trial testimony that Brown shot at him while he drove away with Wiggins' deposition testimony that Detective Bodine told Wiggins that Brown was the person who shot at him and that he could not identify Brown or his brother in a photo lineup. Id. at 15. As to Mariano, Brown contends that his counsel should have properly

cross-examined Mariano's knowledge of the man Mariano knew as "Josh." <u>Id.</u> According to Brown, Josh is another person who was incarcerated at that time. <u>Id.</u> Additionally, Brown avers his counsel should have brought out "the many inconsistencies" that Mariano gave regarding his identification of Brown, such as whether he was wearing a hoodie or a baseball cap. <u>Id.</u> at 15-16. But for his counsel's alleged failure to properly impeach these witnesses, Brown argues that the result of the trial would have been different as the jury would have seen that both witnesses were deceptive. <u>Id.</u> at 16.

Brown raised a similar claim in his Rule 3.850 Motion. Resp. Ex. D1 at 38-40. The circuit court, however, denied relief, explaining:

> Defendant states Wiggins testified at his deposition that Detective Bodine told him Defendant was the one shooting at him. The deposition, however, shows Defendant is mistaken. Wiggins testified Detective Bodine told him the shooter's name "*[a]fter I pointed him out.*" In no way does this mean, as Defendant implies, that the detective told Wiggins Defendant was shooting at Wiggins. It means the detective told Wiggins the name of the individual in the photograph after Wiggins has already identified the shooter.

> Defendant also refers to the Arrest Report to show Wiggins did not know the suspect and could not identify him. The information in the Arrest Report does not contradict Wiggins's deposition statement or trial testimony. Wiggins, clearly, did not know Defendant's name until after he identified Defendant's photograph. Consequently, counsel had no basis to impeach Wiggins on this point.

> Defendant also contends counsel should have highlighted many inconsistencies in Mariano's identification of Defendant. The record, however, belies Defendant's contention. At trial, counsel questioned Mariano about how Mariano's story to the police evolved "throughout the day and the next couple of days . . . ." Counsel further questioned Mariano about looking at photos to identify the shooter and twice picking the wrong individual. Counsel brought out that Mariano told the police multiple stories that were not true when he was brought in for questioning. Mariano testified he

> was not forthcoming with the police. According to Mariano, he was afraid and did not want to be involved in Ms. Gobaton's murder. Counsel extensively questioned Mariano and exposed for the jury the inconsistencies in Mariano's reports to the police. Defendant is not entitled to relief on Ground Five.

Id. at 62-63 (emphasis in original and record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim. Resp. Exs. D2; D3.

To the extent that the First DCA decided these claims on the merits, the Court will address the claims in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of these claims was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of these claims.

Nevertheless, even if the state appellate court's adjudication of these claims is not entitled to deference, Brown's claim is meritless. Regarding Wiggins, as the circuit court pointed out, Wiggins' actual deposition testimony refutes Brown's assertion. Wiggins stated in his deposition that on the day of the incident he did not know of Brown, but Detective Bodine told him Brown's name "[a]fter I pointed him out" of a photo lineup. Resp. Ex. D1 at 386-87. As such, counsel could not have used this information to impeach Wiggins' trial testimony because, at trial, Wiggins testified that, at the time of the incident, he did not recognize the man that was shooting at him. Resp. Ex. B11 at 418-20. Therefore, his counsel was not ineffective for failing to raise this meritless issue. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573.

Turning to Mariano, the Court finds the record again refutes Brown's allegations. Mariano made both an out-of-court and an in-court identification of Brown as the shooter and the man he knew as "Josh." Resp. Ex. B10 at 315-16, 351-54. Moreover, another witness who knew Brown, Jason Garaway, testified that he knew Brown by the name "Josh" as well. Resp. Ex. B12 at 706. During cross-examination, Brown's counsel elicited testimony from Mariano in which he admitted to giving law enforcement multiple, varying stories of what occurred that morning. Resp. Ex. B10 at 383-87. Counsel also got Mariano to admit the first two people he picked out of the photospread were the wrong individuals. Id. at 387-88. However, Mariano testified that he lied at first because he was scared and did not want to be involved, but eventually told law enforcement the truth. Id. at 387. Based on this record, the Court finds counsel adequately cross-examined Mariano regarding the inconsistencies in his stories to police.

Moreover, as noted above, law enforcement obtained Brown's cellphone records and location data, both of which corroborated Wiggins and Mariano's testimony and place Brown at the same geographical location as Wiggins and Mariano. Brown, himself, in a jailhouse call told the person on the other end of the line that he was at the scene. Based on this evidence and the other evidence outlined above, the Court finds there is no reasonable probability the outcome of the trial would have been different had counsel asked these questions. In light of the above analysis, Brown is not entitled to relief on his claim in Ground Five.

### F. Ground Six

In Ground Six, Brown argues that his counsel was ineffective for failing to request a self-defense jury instruction. Petition at 16-17. According to Brown, there was evidence

to support this instruction in that the testimony of several witnesses indicated that Wiggins was shooting at Brown and that Wiggins shot first. Id. at 16. He maintains that there was a valid defense theory that Brown was just there to sell drugs and that he was not the shooter. Id.

Brown raised a similar claim in his Rule 3.850 Motion. Resp. Ex. D1 at 41-44. The circuit court denied relief on this claim, reasoning:

> According to the theory of self defense, an individual can lawfully use deadly force without retreating if that individual reasonably believes such force "is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony[.]" § 776.012, Fla. Stat. (2010). Similarly, to qualify for a stand-your-ground instruction, a person must "have held a reasonable fear of imminent peril of death or great bodily harm . . . ." § 776.013(1) (2010). A defendant who provoked the fight and did not exhaust every reasonable means to escape such danger cannot use the defense. § 776.041, Fla. Stat. (2010).

> As the record shows, there was ample evidence Defendant initiated the attack when he started shooting at Wiggins. Wiggins testified he fled, and Defendant continued to shoot at the back of Wiggins's car. Other witnesses corroborated this evidence by testifying they saw a car driving up Transylvania Avenue toward Blanding Boulevard while someone was standing in the middle of Transylvania Avenue shooting at the fleeing car.

> Wiggins admitted he fired one shot at Defendant after Defendant started shooting at him. According to Wiggins, as he was fleeing Defendant's gunshots, he could only fire one shot because his gun jammed. Thomas Pulley, a firearm examiner with the Florida Department of Law Enforcement, reported of the seventeen cartridge cases found at the scene, only one belonged to Wiggins's gun. Of the remaining sixteen casings, Pulley testified that fourteen came from one gun and two from another.

> Although law enforcement never located the gun from which the fourteen casings came, Pulley was able to conclude

the gun that fired the fourteen shots was a Glock 9mm pistol. Defendant's brother, Maurice Henderson, testified that within a month after Ms. Gobaton's murder, he discovered his Glock 9mm was missing. According to Henderson, he kept that gun in his residence, specifically, in Defendant's bedroom closet.

The evidence is sufficient to show Defendant was the aggressor and could not reasonably believe he was in danger. Therefore, the threat to Defendant followed his provocation. Even as that threat ended, Defendant continued firing. Consequently, counsel was not ineffective for failing to request a self defense or stand your ground instruction as there was no evidence to support either instruction. Defendant is not entitled to relief on Ground Six.

Id. at 63-65 (record citations and footnote omitted). The First DCA per curiam affirmed the circuit court's denial of relief on this claim. Resp. Exs. D2; D3.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, Brown's claim is without merit. The United States Supreme Court has noted that "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74 (1977); see also Kelley v. State, 109 So. 3d 811, 812-13 (Fla. 1st DCA 2013) (holding a court may deny postconviction relief where sworn representations the defendant made to the trial court refute the claims). At a pretrial

hearing, defense counsel represented to the circuit court that he had spoke with Brown about a self-defense theory and that Brown was willing to stipulate that they would not use a self-defense theory nor would they request an instruction on such. Resp. Ex. B8 at 1179, 1193-94. The circuit court then inquired with Brown concerning his counsel's representation, and Brown affirmatively acknowledged that he agreed to not present a self-defense argument. Id. at 1194. Accordingly, Brown's sworn representations to the circuit court that he did not want to pursue a self-defense theory at trial refute his claim here. See Blackledge, 431 U.S. at 74 Kelley, 109 So. 3d at 812-13.

Moreover, the record would not support a self-defense theory. Under Florida law, in order to use deadly force in self-defense, a person must "reasonably believe[] that such force is necessary to prevent imminent death or great bodily harm to himself or herself or another or to prevent the imminent commission of a forcible felony." § 776.012(1), Fla. Stat. (2010). Notably, the justifiable use of deadly force is generally not available to a person who provokes the use of force. § 776.0041, Fla. Stat. (2010). As previously discussed, the unrebutted evidence at trial showed that Brown provoked the use of force by shooting at Wiggins first. Moreover, Wiggins fled the scene after his gun jammed but Brown continued to shoot at Wiggins as he fled the scene. Therefore, not only does the evidence demonstrate that Brown did not have a reasonable belief that such force was necessary to prevent imminent death or great bodily harm, but he provoked the action. Thus, he would not have been entitled to a self-defense instruction. The Court further notes that Brown was engaged in unlawful activity, selling drugs, at the time of the shooting, which would further make a self-defense theory inapplicable. See § 776.013(2)(c), Fla. Stat. (2010) ("The presumption set forth in subsection (1) does not

apply if: . . . The person who uses defensive force is engaged in an unlawful activity or issuing the dwelling, residence, or occupied vehicle to further an unlawful activity."). In light of the above analysis, relief on the claim in Ground Six is due to be denied.

## G. Ground Seven

Next, Brown contends that his counsel failed to object to prejudicial remarks the prosecutor made during closing arguments. Petition at 17-19. Specifically, Brown takes issue with nine comments that he contends amounted to the prosecutor testifying as a witness, commenting on facts not in evidence, making improper inferences, shifting the burden of proof, commenting on Brown's decision not to testify and not to present evidence, and improperly invoking the sympathy of the jury. Id. According to Brown, these remarks prejudicially "infected the jury" and resulted in a verdict that would not have occurred had these comments not been made. Id. at 19.

In his Rule 3.850 Motion filed in state court, Brown raised a substantially similar claim. Resp. Ex. D1 at 44-47. In denying relief on this claim, the circuit court stated:

> Listed below in italics are the prosecutor's comments Defendant challenges.
>
> > *[T]his defendant went somewhere to sell drugs, got mad over something and decided to go try to kill somebody else. And as a result, one of those bullets that was intended to kill Mr. Wiggins killed a young lady.*
>
> Defendant claims the prosecutor was testifying on facts not in evidence and making prejudicial inferences. The prosecutor was simply commenting on the evidence in the record as discussed *supra*.
>
> > *Why did he need someone else with him in the car? And another dealer was interfering in his business or so he perceived it.*

Defendant believes the prosecutor was making improper inferences and testifying as a witness to facts not in evidence. These comments were fair inferences based on the facts in evidence as discussed *supra*.

*That's why his testimony is credible.*

According to Defendant, the prosecutor was improperly vouching or bolstering Mariano's testimony. A prosecutor cannot bolster a witness's testimony by vouching for that witness's credibility. Williamson v. State, 994 So. 2d 1000, 1013 (Fla. 2008); Gorby v. State, 630 So. 2d 544, 547 (Fla. 1993). "Improper bolstering occurs when the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." Hutchinson v. State, 882 So. 2d 943, 953 (Fla. 2004) *abrogated on other grounds by* Deparvine v. State, 995 So. 2d 351 (Fla. 2008); see Brooks v. State, 762 So. 2d 879, 902 (Fla. 2000) (reasoning state cannot influence jury with "composite judgment" of state attorney office's investigations and discussions taking place before trial). The state can, however, argue "a conclusion that can be drawn from the evidence." Valentine, 98 So. 3d at 56 (citation omitted).[6] Here, the prosecutor was pointing out to the jury that other evidence corroborated Mariano's testimony. Consequently, this comment was a proper inference drawn from the evidence.

*I mean what the defense would have you believe is that these trees and these other people that imagine-imagined that he was shooting back or he was shooting.*

Defendant claims this comment was designed to ridicule the defense and its witnesses. Considering the comment in context, the prosecutor was commenting on Mr. Wiggins's testimony and whether it comported or agreed with other testimony. Kendall Anderson testified for the defense at trial. Defense counsel questioned Anderson about the bullet strikes to trees around Mariano's house. It is reasonable for the prosecutor to challenge and comment on the evidence and its contribution to the defense.

---

6 Valentine v. State, 98 So. 3d 44 (Fla. 2012).

> *[T]he defendant repositioned to get a better shot at Mr. Wiggins.*

Defendant asserts this comment was based on facts not in evidence. Defendant is mistaken because, as stated *supra*, Defendant was at his car when he began shooting, and witnesses testified that they saw the shooter in the street continuing to fire at Mr. Wiggins's car as it drove away. Consequently, the prosecutor was properly commenting on facts in evidence.

> *See, the problem why they can't even admit that this is Taurice Brown is because of that principal law.*

Defendant asserts this statement, made in the State's rebuttal argument, was highly prejudicial and commented "on Defendant's silence, burdenshifting or remarks on Defendant's guilt." Defendant, however, is mistaken. This comment addressed the defense's theory that bullet strikes on trees on and near Mariano's property showed that shots were fired in Defendant's direction. The State was merely commenting on the evidence Defendant presented at trial.

> *Notice Mr. Bateh didn't challenge that. He didn't challenge the fact that Mr. Wiggins was able to identify that man here in court today-or I'm sorry-two days ago.*

According to Defendant, this was a comment on Defendant's failure to present evidence and shifted the burden to Defendant. Defendant's claim has no merit. If nothing else, Defendant is unable to show prejudice in that this comment caused the jury to reach a more severe verdict than it would without the prosecutor making the comment. See State v. DiGuilio, 491 So. 2d 1129, 1139 (Fla. 1986) (reasoning error is harmless if no reasonable probability it affected verdict).

> *Will they be held accountable for what they have been charged with? Absolutely. But he is on trial here today.*

Defendant contends this amounted to vouching for and bolstering Mariano's and Wiggins's credibility and was based on facts not in evidence. First, nothing in that comment refers

to credibility and, moreover, there are facts in evidence relating to both witnesses' pending charges.

> *And when you can't argue the fact or the law, you put other people on trial.*

Defendant alleges this comment "was designed to make it appear that Brown had no right to challenge the State's witnesses, invoke the sympathy of the jury that Brown had the audacity to put the witnesses through the ordeal of a trial of that the trial was a farce because Brown is guilty." Defendant's allegations are leaping to unwarranted conclusions. The comment when viewed in its entirety shows the prosecutor was simply challenging the defense's version of events. "Their version is that this defendant was there to sell drugs and when that gunfire started, which they say Mr. Wiggins started, he just hit the ground, didn't do anything at that point." This was a proper comment.

Resp. Ex. D1 at 65-69 (record citations omitted). The First DCA per curiam affirmed the circuit court's denial of this claim. Resp. Exs. D2; D3.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Nevertheless, even if the state appellate court's adjudication of this claim is not entitled to deference, the claim in Ground Seven is meritless. The state circuit court did a thorough evaluation of the actual comments and the context in which they were made relative to the evidence presented at trial, and this Court finds no error in that analysis.

Upon review of the record, the Court finds none of these comments were improper for the same reasons the circuit court expressed. However, even if all these comments were improper, Brown cannot demonstrate prejudice. As described above in the Court's analysis of Ground One, the State introduced substantial evidence of Brown's guilt, including multiple eye witness accounts (two of which specifically identified Brown as the shooter), extensive forensic evidence, cellphone evidence putting Brown at the scene, and Brown's own admission to being at the scene. Accordingly, there is no reasonable probability the outcome of the trial would have been different had the prosecutor never made these comments. See Cargill v. Turpin, 120 F.3d 1366, 1379 (11th Cir. 1997) (quoting Brooks v. Kemp, 762 F.2d 1383, 1400 (11th Cir. 1985)) (noting that "[i]mproper prosecutorial arguments will not compel habeas corpus relief, however, unless they rendered the defendant's sentencing proceeding 'fundamentally unfair.' . . . In making this inquiry, we must determine whether the improper comments 'were so egregious as to create a reasonable probability that the outcome was changed because of them.'"). For the above stated reasons, Brown is not entitled to relief on his claim in Ground Seven.

### H. Ground Eight

Lastly, Brown asserts that his counsel was ineffective for failing to file a sufficient motion for new trial or a motion for arrest of judgment. Petition at 19-20. According to Brown, his counsel should have based the motion for new trial on the following points: (1) the prosecution failed to give notice of its reliance on the principal theory; (2) the State failed to charge felony murder in the Indictment and the reading of the felony murder instruction was error; (3) the circuit court did not give instructions on defense theories (theories which he does not specify); (4) the prosecutor's remarks in closing arguments

deprived him of a fair trial; (5) the State tried Brown under a defective Indictment; and (6) count one must be vacated because the State did not charge felony murder in the Indictment. Id.

Brown raised a similar ground for relief in his Rule 3.850. Resp. Ex. D1 at 47-50. In denying relief on this claim, the circuit court reasoned:

> In Ground Nine, Defendant claims counsel failed to file a sufficient motion for new trial. According to Defendant, counsel should have included in the Motion for New Trial the claims Defendant raised in Grounds One, Two, Six, and Seven of the instant Motion. As the Court finds Defendant is not entitled to relief on these Grounds, Defendant is not entitled to relief on this claim.
>
> Defendant also claims the verdict is contrary to the law and weight of the evidence, and counsel should have filed a motion in arrest of judgment. Defendant tracks the language of the rule in contending he would have prevailed had counsel filed this motion. Defendant contends, first, that the Information did not charge him with felony murder, and, second, that the verdict finding him guilty of premeditated murder was contrary to the weight of the evidence. The Court denies these claims for the same reasons as stated in the analysis of Ground Two. Defendant is not entitled relief on this claim.

Id. at 69-70. The First DCA per curiam affirmed the circuit court's denial of this claim. Resp. Exs. D2; D3.

To the extent that the First DCA decided the claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceedings. Thus, Brown is not entitled to relief on the basis of this claim.

Nevertheless, even if the First DCA's adjudication of this claim is not entitled to deference, this claim is meritless. Each of the arguments Brown contends his counsel should have used in support of a motion for new trial or motion for arrest of judgment is a claim he has individually raised in his Petition. As explained at length above, none of those claims has merit. It follows then, that these arguments would have been meritless had counsel raised them in a motion for new trial or motion in arrest of judgment. Counsel cannot be deemed deficient for failing to raise arguments that would not have been successful. See Diaz, 402 F.3d at 1142; Bolender, 16 F.3d at 1573. Accordingly, relief on Brown's claim in Ground Eight is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Brown seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Brown "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Brown appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any

pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 14th day of April, 2020.


*Marcia Morales Howard*
**MARCIA MORALES HOWARD**
United States District Judge


Jax-8

C:      Taurice Leonard Brown #J48890
        Michael Brent McDermott, Esq.